# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TOWER INSURANCE COMPANY | : | CIVIL ACTION |
| OF NEW YORK, et al | : | |
| | : | |
| v. | : | |
| | : | |
| DOCKSIDE ASSOCIATES | : | NO. 10-1886 |
| PIER 30 LP, et al | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                         **July 6, 2011**

Moving for summary judgment, Tower Insurance Company of New York ("Tower") and Everest National Insurance Company ("Everest") seek a declaration that they have no duty to defend or indemnify Dockside Associates Pier 30, LP ("Dockside") and DePaul Management Company ("DePaul") in an action pending in Pennsylvania state court.[1] They contend that the claims against Dockside and DePaul in the underlying action are not covered under the commercial general liability insurance policies issued by them because the claims arise out of a contract. In the alternative, they argue that coverage is barred by mold exclusions in the policies and the "known loss" doctrine; the insureds failed to give Tower proper notice of the loss; and the loss occurred prior to the effective date of the policies.

Dockside and DePaul contend that the claims are covered because the complaint in the underlying action asserts claims other than for breach of contract. They also contest that policy exclusions bar coverage, the "known loss" doctrine applies, or they failed to provide proper notice of loss.

---

[1] Jurisdiction in this declaratory judgment action is predicated on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

After reviewing the policies and the plaintiffs' complaint in the underlying action, we conclude that Tower and Everest have no duty to defend and indemnify Dockside and DePaul. Accordingly, Tower and Everest's motion for declaratory judgment will be granted.

**The Underlying Action**

In their amended complaint filed in the Philadelphia County Court of Common Pleas, Raymond Forceno and Cheryl Ann Ryan assert causes of action arising out of their purchase of a condominium unit from Dockside. They allege that as a result of faulty construction, water "intruded" into their unit causing water damage and mold. *Compl.,* at 20. They seek damages for "the cost of repairing the condominium unit, permanent diminished value of the condominium unit, personal injuries, economic damages resulting from moving from the condominium unit and costs associated with relocation." *Compl.,* at 16. They sued Dockside, the seller; DePaul and Camco Management Company ("Camco"), the managers of the property at various times; Keating Building Company ("Keating"), the builder of the condominium; and Dockside Condominium Association ("Condominium Association"), owner of the common areas.

The state court complaint contains seven counts. Five counts are brought against Dockside,[2] one against DePaul,[3] and one against Keating. The causes of action against Dockside are for breach of contract, breach of implied warranty, unjust enrichment, fraud, and deceptive and fraudulent business practices under the "state consumer protection statute." The count against DePaul is for negligently failing to maintain and repair the

---

[2] Count two is against Dockside and the Condominium Association.

[3] Count seven is against DePaul, Camco and the Condominium Association.

2

condominium unit.

Our task is to decide whether Tower and Everest, at this time, have a duty to defend and indemnify Dockside or DePaul against any applicable claims. In other words, we must determine whether any of the applicable claims are potentially covered by the policies issued to Dockside and DePaul.

## Legal Standard

The interpretation of an insurance contract is a question of law. *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 360 (3d Cir. 2004) (citing *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir. 1999)). "Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 657 A.2d 1252, 1255 (Pa. Super. 1995), *rev'd on other grounds*, 701 A.2d 1075 (Pa. 1997).

A court must give effect to the plain language of the insurance contract read in its entirety. *Lexington Ins. Co. v. W. Pa. Hosp.,* 423 F.3d 318, 324 (3d Cir. 2005) (quoting *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 901 (3d Cir. 1997)). When the policy language is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. Ct. 2001) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)). However, policy language may not be stretched beyond its plain meaning

to create an ambiguity. *Trizechahn Gateway LLC v. Titus,* 976 A.2d 474, 483 (Pa. 2008).

The insured has the initial burden of establishing coverage under the policy. *Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. Ct. 1995). Conversely, when the insurer relies on a policy exclusion as the basis for denying coverage, it has the burden of proving, by uncontradicted facts, that the exclusion applies. *Mistick, Inc. v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. Ct. 2002); *Butterfield*, 670 A.2d at 651-52. Policy exclusions are strictly construed against the insurer. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001) (citing *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998)).

**Duty to Defend**

An insurance carrier's duty to defend is distinct from its duty to provide coverage. It is interpreted more broadly than the duty to indemnify. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 908 A.2d 888, 896 n.7 (Pa. 2006). An insurer may have a duty to defend even though it has no duty to indemnify. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)*.* A duty to indemnify does not arise until the insured is found liable for a covered claim. *Id.*

Because the duty to defend is broader than the duty to indemnify, the complaint in the underlying action must be construed liberally, the factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. 1997). To prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, not how the underlying plaintiff frames the request for relief.

*Kvaerner Metals,* 908 A.2d at 893*; Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). In other words, the focus of the coverage inquiry is on the substance, not the form, of the allegations.

An insurer is obligated to defend the insured against any suit arising under the policy "'even if the suit is groundless, false, or fraudulent.'" *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. Ct. 1994) (quoting *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 321 (Pa. 1963)). Consequently, whenever the complaint sets forth facts raising claims that could possibly come within the policy's coverage, the insurer's duty to defend is triggered. *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 931 (Pa. Super. Ct. 2004); *Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1219, 1222 (Pa. Super. Ct. 2002). If a single claim in a multiple claim complaint is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim. *Frog, Switch & Mfg. Co.*, 193 F.3d at 746; *Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co.,* 752 F.2d 71, 75 (3d Cir. 1985).

Applying these principles to this case, we examine the insurance policies and the allegations in the state court complaint. What the complaint in the state action alleges Dockside and DePaul did and the language of the insurance policies are not in dispute. Thus, we must decide whether Tower and Everest have a duty to defend under the policies as a matter of law.

**Discussion**

The commercial general liability policy issued by Tower to Dockside and DePaul assures that Tower "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance

5

applies."[4] It further provides that it "will have the right and duty to defend the insured against any 'suit' seeking those damages."[5]

The Tower policy applies only where "'bodily injury' or 'property damage' is caused by an 'occurrence,'"[6] which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[7] The policy specifically excludes coverage for "damages by reason of the assumption of liability in a contract or agreement."[8]

The commercial liability policy issued by Everest covers the excess of the underlying limits of the Tower policy. Because the Everest policy is an excess liability policy and "[f]ollows the terms, definitions, conditions and exclusions that are contained in the [Tower policy],"[9] it does not provide broader coverage than the Tower policy.[10] Consequently, if there is no coverage under the Tower policy, there can be none under the Everest policy. Conversely, if the Tower policy covers the loss, so does the Everest policy.

Tower and Everest contend that they have no obligation to defend or indemnify Dockside or DePaul because the underlying action is for breach of contract, which is not an "occurrence" as defined in the policies. The insureds counter that the claims against

---

[4] *Commercial General Liability Coverage*, § 1, ¶ 1(a).

[5] *Id.*

[6] *Id.* at § 1, ¶ 1(b)(1).

[7] *Id.* at § 5, ¶ 13.

[8] *Id.* at § 1, ¶ 2(b).

[9] *Everest Commercial Excess Liability Policy,* § 1, ¶ A (1)(a).

[10] *Id.* at § 1, ¶ A (1)(b).

6

Dockside are covered because there are no allegations that it intentionally breached its contract and the amended complaint requests consequential damages. They also argue that because the claim against DePaul is for negligence, Tower and Everest have a duty to defend and indemnify against that claim.

*Claims Against Dockside*

In Pennsylvania, breach of contract and breach of warranty claims are not covered under general liability insurance policies. *Nationwide Mut. Ins. Co. v. CPB Int. Inc.,* 562 F.3d 591, 597-98 (3d Cir. 2009) (citing *Pa. Mfrs.' Ass'n Ins. Co. v. L.B. Smith Inc.,* 831 A.2d 1178, 1181 (Pa. Super. Ct. 2003)). General liability policies are intended to protect insureds from accidental injuries, not contractual disputes. *Id.* (citing *L.B. Smith,* 831 A.2d at 1181)). Counts one and two of the underlying complaint assert causes of action against Dockside for breach of contract and breach of implied warranty. Because these claims arise out of Dockside's contractual obligations, they are not covered "occurrences" under the policies. *See Specialty Surfaces Int., Inc. v. Sprinturf, Inc.*, 609 F.3d 223, 238 (3d Cir. 2010) (claims for breaches of contract cannot constitute an "occurrence."); *CPB Int.,* 562 F.3d at 597-98; *Redevelopment Auth.,* 685 A.2d at 589.

Dockside does not dispute that these claims arise from its contractual obligations. Nevertheless, it argues that the claims are covered because there are no allegations that Dockside intended to improperly build the condominium unit and also because Forceno and Ryan allege consequential damages, including damage to the carpets due to water infiltration.

Whether Dockside intentionally breached its contract is irrelevant. A claim arising from a breach of contract is not covered under a general liability policy because it is not

7

considered an "occurrence." *CPB Int.,* 562 F.3d at 593. This is true regardless of whether or not the breach was intentional. *See, e.g., Bomgardner v. State Farm Fire and Cas.,* No. 10-1287, 2010 WL 3657084, at *5 (E.D. Pa. Sept. 15, 2010) (that damages were "'unexpected and unintentional' does not bring this claim within the definition of 'occurrence'").

Clearly, the claims against Dockside in counts three, four and five are not covered by the policies. These counts state causes of action involving fraudulent conduct. They allege that despite its knowledge, Dockside failed to disclose the water infiltration problems in the condominium unit to Forceno and Ryan. Intentional acts, in contrast to accidents, are not covered "occurrences" under a general liability policy. *Sclabassi v. Nationwide Mut. Fire Ins. Co.,* 789 A.2d 699, 703 (Pa. Super. Ct. 2001); *United Nat'l Ins. Co. v. St. Paul Reinsurance Co.,* No 07-2092, 2008 WL 4671780, at *4 (M.D. Pa. Oct. 17, 2008)). Thus, these claims, which are based upon intentional rather than accidental acts, are not covered by the insurance policy.

Because claims one and two arise from an alleged breach of contract and counts three, four and five involve intentional conduct, they are not covered by the policies. Thus, Tower and Everest have no duty to defend Dockside in the underlying action.

*Claims Against DePaul*

Count seven of the complaint is for negligence against DePaul, Camco and the Condominium Association.[11] It alleges that DePaul was "responsible for maintaining the premises," and was negligent by: "(a) [f]ailing to repair leaks that occurred in plaintiffs' unit;

---

[11] Tower and Everest voluntarily dismissed Camco and the Condominium Association from this action. With respect to this count, we refer only to DePaul as the defendant.

(b) [failing] to prevent mold; and (c) [failing] to remediate the mold." *Compl.*, ¶ 67.

Tower and Everest argue that although the claims against DePaul sound in negligence, the gist of the action is contract. They contend that DePaul's duty to maintain the premises arose from its obligations under the Purchase and Sale Agreement ("Sale Agreement"). Thus, according to DePaul, the claim in count seven should be considered one for breach of contract.

We look at the factual allegations in the complaint, not how the underlying plaintiff frames the request for relief. *Mut. Benefit Ins.*, 725 A.2d at 745; *QBE Ins. Corp. v. M&S Landis Corp.,* 915 A.2d 1222, 1225 (Pa. Super Ct. 2007). Under the "gist of the action" doctrine, plaintiffs are precluded from "recasting" a claim for breach of contract into a tort claim. *Erie Ins. Exch. v. Abbott,* 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009); *Jones v. ABN AMRO Mortg. Grp., Inc.,* 606 F.3d 119, 123 (3d Cir. 2010). The "critical" distinction between a breach of contract claim and a tort claim "is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" *Erie Ins. Exch.,* 972 A.2d at 1238 (quoting *Reardon v. Allegheny College,* 926 A.2d 477, 486-87 (Pa. Super. Ct. 2007)).

Nothing in the underlying complaint alleges that a contractual relationship exists among Forceno, Ryan and DePaul. Although count seven alleges that DePaul was "responsible for maintaining the premises" and "making repairs on the units," it does not identify the source of its duty. Tower and Everest argue that the Sale Agreement is the source of DePaul's duty to maintain the premises. However, DePaul is not a party to the Sale Agreement. The Sale Agreement is between Dockside and Forceno. Nothing in the

Sale Agreement addresses which party is responsible for maintaining and repairing the condominium.

Because DePaul had no contractual relationship with Forceno and Ryan, and because the claim against it is for negligence, the claim against DePaul does not arise from a breach of contract. *See Wausau Underwriters Ins. Co. v. State Auto. Mut. Ins. Co.,* 557 F. Supp. 2d 502, 514 (D.N.J. 2008) (applying Pennsylvania law and ruling that claims against insured not based on contract where no contractual relationship exists and underlying claim is not for breach of contract). Thus, because the claim against DePaul in the underlying complaint could come within the coverage of the policies, the gist of the action doctrine does not excuse Tower and Everest from defending DePaul.

In essence, the claim against DePaul is for failure to properly perform repair work. Because a claim of faulty workmanship does not arise from an accident, it does not qualify as an "occurrence" under a general liability policy. *Kvaerner Metals,* 908 A.2d at 888. Hence, even if application of the gist of the action doctrine did not require treating the seventh count as a contract claim, the claim is not one coming within the policies' definition of a covered occurrence.

*Fungi or Bacteria Exclusion*

Tower and Everest contend that even if the damage to Forceno and Ryan's condominium unit is considered an "occurrence," there is no coverage under the policies' fungi and bacteria exclusions. Tower's insurance policy contains the following exclusion:

> This insurance does not apply to:
> a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestation of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including

> its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

Everest's policy contains a similar endorsement for "Organic Pathogen, Mold or Fungus." It excludes coverage for the following:

> 1. Injury or damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, growth, release or escape of any "organic pathogen, mold or fungus" at any time.
>
> 2. Any loss, costs or expense arising out of any:
>    a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "organic pathogen, mold or fungus[.]"

There is no question that the underlying complaint includes a claim for mold damage. Contrary to Tower's contention, it is not limited to mold damage. Paragraph 16 of the complaint alleges that the plaintiffs "suffered significant damage as a direct and proximate result of mold *and water intrusion*." *Compl.,* at 16. (emphasis added). The claim for water intrusion is separate and independent of the claim for mold. Water damage is not excluded in the policies. Thus, the mold exclusion does not act as a complete bar to coverage, but only excludes coverage for damage caused by mold.

*"Known Loss" Doctrine*

Tower and Everest argue that because there is no material dispute that Dockside and DePaul were aware of water infiltration problems prior to the effective date of the

11

policy, the "known loss" doctrine and the policy provisions covering pre-existing conditions excuse them from defending the insureds in the state court action.

The "known loss" doctrine precludes one from insuring against a loss that has already occurred or is ongoing. *Rohm & Hass Co. v. Cont'l Cas. Co.,* 781 A.2d 1172, 1176 (Pa. 2001) (internal quotations and citations omitted). Because insurance is intended to protect insureds from unknown risks, an insurance policy does afford protection to an insured who was or should have been aware of the existence of a covered condition when entering into an insurance contract. *Id.* at 1177; *Cincinnati Ins. Co. v. Pestco, Inc.,* 374 F.Supp. 2d 451, 462-63 (W.D. Pa. 2004).

The Tower and Everest policies were issued on December 1, 2007. Tower and Everest have produced three letters and an email which they contend prove that Dockside and DePaul were aware of water infiltration problems prior to that date. The first letter, dated November 21, 2002, is from Michael Weaver of the DePaul Group to James Gallagher of the Keating Corporation.[12] In it, Weaver advises Gallagher that water infiltration in the condominium is a "substantial issue," and tenants "are threatening to withhold rent [and] move out." Weaver's letter concludes that DePaul "will hold Keating Building Corporation responsible for any and all damages caused by this issue."

The second letter, dated November 22, 2002, from Katherine Koromvokis, Keating's Assistant Corporate Counsel, to Weaver, acknowledges receipt of Weaver's letter "regarding the status of the water damage." She also informs Weaver that Keating hired a consultant "to perform investigative testing and inspection," and states that "the problems

---

[12] Michael Weaver and James Gallagher's respective positions with DePaul and Keating are unknown. Dockside and DePaul have only admitted that Weaver was "affiliated" with DePaul. *Def. SOF,* ¶ 16.

may relate to design issues."

In a January 16, 2003 email to Koromvokis, David Hershey, DePaul's Director of Risk Management, wrote that "[g]iven the presence of moisture/water within the building resulting from leaks, you may wish to have the project manager utilize a dehumidifying process in an attempt to reduce the likelihood of mold growing within the walls, floors etc."

The final letter, dated April 16, 2007, is from Forceno to Noreen Treichler.[13] In the letter, Forceno states that as a result of a "violent storm over this past weekend . . . the carpeting in the master bedroom is soaked, as well as the carpeting in the living room." He also states that "[i]n the past, we have had leaks in the bedroom, and you and your people had made a valiant effort to correct those leaks: I had been advised that they had been fixed. I guess that wasn't so." Forceno concludes his letter by requesting compensation for the damages from "whoever is responsible."

Neither the November 2002 letters nor the January 16, 2003 email support the conclusion that Dockside and DePaul knew or should have known of potential water damage when it applied for the insurance policies on December 1, 2007. That Dockside and DePaul were aware of water infiltration problems in 2002 and early 2003 does not mean that the problems persisted over the intervening five years. Indeed, there is evidence that Dockside and DePaul believed that the water infiltration had been ameliorated prior to December 1, 2007. On November 3, 2006, Dockside, Blue Builders, Inc., ("Blue Builders")[14] and Keating entered into a Settlement Agreement ("Settlement

---

[13] Forceno's letter lists Treichler's title as Dockside Condominiums Property Manager.

[14] Blue Builders was originally contracted to build the Dockside condominiums. It later assigned the project to Keating.

13

Agreement") in which Keating agreed to reimburse Dockside $200,000 for work done to "remediate the Water Infiltration Problems." Settlement Agreement, ¶ 1.

Although the 2002 letters and 2003 email do not prove that Dockside or DePaul had knowledge of the water infiltration problem at the time they entered into the insurance policies, Forceno's letter to Treichler does. In his letter, almost eight months before the policies were issued, Forceno specifically describes water leaking into his unit, causing damage. He also refers to past attempts to correct the problem, suggesting that water infiltration was an ongoing problem in his unit.

Forceno's letter shows that Dockside and DePaul were aware of ongoing water infiltration problems prior to entering into the insurance policies. Dockside and DePaul do not deny that Treichler received the letter. They note that the letter identifies Treichler as a "representative of Dockside Condominiums, not Dockside Associates [or] DePaul." Yet, they do not deny that they had ultimately received it. Although the parties do not address Treichler's official title or employment relationship with the insureds, DePaul does not deny that she was its employee.

Dockside and DePaul do not contend that the water intrusion problem was fixed between the date it received Forceno's letter and the date it entered into the insurance contracts. Based on these facts, there is no genuine dispute that DePaul knew of the water infiltration problems in the condominium unit prior to entering into the insurance policy on December 1, 2007.

Dockside and DePaul counter that the "known loss" doctrine should not apply to them because they are not "sophisticated" parties. As developers and managers of a large condominium complex in Philadelphia, they can hardly be considered "unsophisticated."

Indeed, according to DePaul's own website, it "has designed, built and currently manages shopping centers, commercial office buildings, and rental communities consisting of approximately 5,000 apartments," and "earned a reputation for uncompromising quality and attention to detail."[15]

Putting the "known loss" doctrine aside, Dockside and DePaul would still not be entitled to coverage. The policies specifically exclude coverage for property damage that is known to have occurred prior to the effective date of the policies.[16] Because Forceno's letter to Treichler provided Dockside and DePaul with written notice of the water damage prior to the effective date of the policies, the damage caused by the water infiltration is not an insured loss.

Because there is no material dispute that Dockside and DePaul were aware of ongoing water infiltration in Forceno and Ryan's condominium unit prior to entering into the insurance contracts, we conclude that Tower and Everest are excused from defending against the underlying claims pursuant to the "known loss" doctrine and the specific exclusion for known losses contained in the policies.

**Conclusion**

Because the claims against Dockside in the underlying action involve breach of contract and fraud, Dockside is not covered by the general liability insurance policies issued by Tower and Everest. Similarly, because the claim against DePaul is for faulty workmanship, it is not a covered claim. Finally, even if the policies did cover the claims

---

[15] http://www.docksidecondominiums.com/homepage.html (last visited July 6, 2011).

[16] "This insurance applies to . . . 'property damage' only if . . . no insured . . . and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the . . . 'property damage' had occurred." *Commercial General Liability Coverage*, § 1, ¶ 2(b).

against Dockside and DePaul, because Dockside and DePaul were aware of the ongoing water infiltration and related property damage prior to entering into the insurance contracts, the "known loss" doctrine and the policy provisions bar coverage for these claims. Therefore, because Tower and Everest have no duty to defend Dockside and DePaul in the underlying action, we shall grant the motion for summary judgment.